802 F.2d 96
 In re GRAND JURY MATTER.
JOHN F. KENNEDY MEMORIAL HOSPITAL, District Council 33,
District Council 33 Health & Welfare Fund, and
Earl Stout, Appellants,
v.
UNITED STATES of America.
 No. 86-1170.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 16, 1986.
Decided Oct. 1, 1986.
As Amended Oct. 7, 1986.
 
 Richard A. Sprague, Bruce L. Thall (argued), Sprague, Thall & Creamer, Philadelphia, Pa., for appellants.
 Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Thomas H. Lee, II, Asst. U.S. Atty. (argued), Philadelphia, Pa., for appellee.
 Before SEITZ, SLOVITER and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Facts
 
 1
 In September, 1985, a federal grand jury issued a subpoena duces tecum directing the John F. Kennedy Memorial Hospital (JFK Hospital) to produce records and documents in nine separate categories, mostly relating to the finances of the hospital (the 1985 subpoena). Appellants seek reversal of the district court's order dated March 11, 1986, directing JFK Hospital to comply with the grand jury subpoena.
 
 
 2
 Appellant JFK Hospital is apparently owned by appellant District Council 33 of the American Federation of State, County and Municipal Employees (District Council 33), which represents over 12,000 employees of the City of Philadelphia.[1] Appellant District Council 33 Health & Welfare Fund was established to provide health benefits to members of District Council 33 and their dependents. The fourth appellant, Earl Stout, is President of District Council 33, Chairman of the Board of Trustees of the Health and Welfare Fund, and Chairman of the Board of Directors of JFK Hospital.
 
 
 3
 At the request of counsel for the hospital and District Council 33, the government provided a Schofield affidavit that stated that the grand jury was investigating possible violations of 18 U.S.C. Sec. 1962, which is part of the Racketeer Influenced and Corrupt Organizations Act (RICO), and 18 U.S.C. Sec. 1341, which prohibits mail fraud, and that the records subpoenaed were essential to that investigation. See In re Grand Jury Proceedings (Schofield I), 486 F.2d 85 (3d Cir.1973); In re Grand Jury Proceedings (Schofield II), 507 F.2d 963 (3d Cir.), cert. denied, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).
 
 
 4
 JFK Hospital, District Council 33, its Health and Welfare Fund and Stout moved to quash the subpoena. Before the government could respond to this motion, the district court issued an order on October 10, 1985 quashing the subpoena. The government alleges that it did not receive a copy of this order within the ten days in which it was required to request reconsideration pursuant to Local Rule 20(g) of the Eastern District of Pennsylvania, adopted in criminal cases by Local Criminal Rule 2. Some time thereafter, the government filed a Motion for Leave to File Motion for Reconsideration Out of Time and a Motion for Reconsideration of the order quashing the subpoena. The district court granted both motions on February 3, 1986, vacated its order of October 10, 1985, and ordered JFK Hospital to comply with the subpoena by February 3, 1986.
 
 
 5
 Appellants moved for reconsideration of the February 3, 1986 order. After a hearing, appellants' motion was denied by the district court in an order filed on March 11, 1986 affirming the order of February 3, 1986. In effect, this order denied appellants' motion to quash the grand jury subpoena. All four then took this appeal from that order.
 
 II.
 Appealability and Standing
 
 6
 The government has filed a motion to dismiss the appeal, alleging that appellants lack standing. Our disposition of almost all of the issues raised by the motion and on the merits of the appeal is controlled by this court's decision last year in In re Grand Jury Matter (District Council 33), 770 F.2d 36 (3d Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985), involving three of the four appellants before us here. In that case, which arose from a grand jury subpoena issued August 21, 1984 directed to District Council 33 (the 1984 subpoena), the district court denied a motion to quash the subpoena, the movants appealed, we dismissed the appeal of several appellants on the ground that they had no standing, and, on the merits, we affirmed the district court's refusal to quash.
 
 
 7
 We turn first to the status of appellant JFK Hospital, to whom the subpoena was directed. As we stated in our prior opinion, the denial of a motion to quash a grand jury subpoena is not a final order for the purposes of an appeal unless and until the party to whom the subpoena is directed disobeys its commands and is subsequently cited for contempt. Id. at 38 (citing United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906)).
 
 
 8
 As the Supreme Court has made clear, this rule is not merely one of convenience. "[E]ncouragement of delay is fatal to the vindication of the criminal law.... It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the 'orderly progress' of investigation should no more be encouraged in one case than in the other." Cobbledick, 309 U.S. at 325, 327, 60 S.Ct. at 541, 542. It follows that because JFK Hospital has not followed the established route for review, insofar as it has not chosen to disobey the subpoena and incur a citation for contempt, the denial of the hospital's motion to quash the subpoena is not a final order as to it and its appeal will be dismissed.
 
 
 9
 We see no reason why the same ruling should not apply to District Council 33 even though the subpoena was not directed to it. Third parties have sometimes been permitted to intervene and appeal the refusal to quash a subpoena because they do not have the option of resisting compliance and standing in contempt. See In re Grand Jury (Schmidt), 619 F.2d 1022, 1024-27 (3d Cir.1980). The court's order denying a motion to quash is effectively a final order to those who have no further steps they can follow. As we pointed out in Schmidt, "it is unlikely that a third party, even an employee, would risk a contempt citation in order to provide [the employer] with immediate review." Id. at 1024-25. Similar considerations have led this court to hold final and appealable by a client orders refusing to quash subpoenas to an attorney that would have required production of documents in which the client claimed a privilege. See, e.g., In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 800-01 (3d Cir.1979); In Re Grand Jury (Freedman), 541 F.2d 373, 377 (3d Cir.1976).
 
 
 10
 Although we have found no cases considering the finality of an order refusing to quash a subpoena as to the parent of the subpoenaed party, it appears to us that District Council 33, as the owner of JFK Hospital, is in a position to control the hospital's decision whether to produce the records or stand in contempt. Thus review of District Council 33's claim on the merits is not "now or never", Schmidt, 619 F.2d at 1025, and its appeal will also be dismissed for want of a final order.
 
 
 11
 We turn next to the status of appellant Stout, who here, as in the earlier case, is acting as an intervenor. The district court's order is final as to Stout because, notwithstanding his position as Chairman of the hospital's Board of Directors, we cannot assume that he could personally control its decision whether to produce the records or risk contempt. Nonetheless, because the subpoena is not directed to Stout, we must still consider whether he has standing to appeal the court's order. We stated in District Council 33 that "Stout has failed to assert any personal property right or privilege at stake and, in fact, has claimed no legitimate interest whatsoever in the [1984] subpoenaed materials." Id. at 38. Stout has made no greater showing of interest in the materials sought in the 1985 subpoena. Accordingly, we hold that he has no standing to pursue this appeal.
 
 
 12
 Finally, we turn to the status of appellant Health and Welfare Fund. It is in the same position as Stout with respect to finality. The standing considerations are different. In our prior opinion we stated that the Fund "may possess a proprietary interest in at least some of the records which District Council 33 was directed to produce," District Council 33, 770 F.2d at 39, and assumed without deciding that the Fund had standing to appeal. We cannot make a meaningful distinction between the considerations that led us to consider the merits of the Fund's challenge to the 1984 subpoena and those that would apply to the appeal before us. For that reason, we feel bound to consider the merits of the Fund's challenge to the 1985 subpoena.[2]
 
 III.
 
 13
 District Court's Power to Reconsider an Order
 
 
 14
 Appellant has put forth two arguments on the merits of the appeal. It contends first, that the district court lacked jurisdiction to reconsider its order quashing the 1985 grand jury subpoena and second, that the trial court abdicated its responsibility in ordering enforcement of the grand jury subpoena. We will consider these in turn.
 
 
 15
 The argument that the district court lacked jurisdiction to reconsider its October 10, 1985 order quashing the grand jury subpoena is based on the government's failure to make a motion for reconsideration within ten days of the order. Appellant concedes that no Federal Rule of Criminal Procedure expressly precludes the district court from reconsidering an order. It argues, by analogy to the federal statute requiring the government to file an appeal within 30 days after certain adverse orders in the preliminary stages of a criminal trial, see 18 U.S.C. Sec. 3731, that the government's time for seeking reconsideration in the district court was similarly limited. This argument is deficient on its face. The statute applies only to appeals. There would be no reason or justification for us to extend it by judicial fiat to motions for reconsideration in the trial court.
 
 
 16
 Apparently recognizing that its statutory argument is unpersuasive, appellant next turns to the local rules of the United States District Court for the Eastern District of Pennsylvania to buttress its jurisdictional argument. Local Rule of Civil Procedure 20(g), applied to criminal cases under Local Rule of Criminal Procedure 2, provides that motions for reconsideration or reargument must be served within ten days of the entering of a judgment or order.
 
 
 17
 Preliminarily, we point out that a local rule of procedure cannot possibly affect the jurisdiction of the court. Local Rules of practice, not inconsistent with the federal rules, are authorized under Fed.R.Civ.P. 83 and Fed.R.Crim.P. 57. However, federal rules establishing time limitations, unlike some statutory provisions, are ordinarily not jurisdictional. See Schacht v. United States, 398 U.S. 58, 63-64 & 65-69, 90 S.Ct. 1555, 1559 & 1560-1562, 26 L.Ed.2d 44 (Harlan, J., concurring) (1970). As Justice Harlan stated, when a time requirement in a rule is established under a broad statutory delegation,
 
 
 18
 it is appropriate to apply the "general principle" that " '[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it,' " American Farm Lines v. Black Ball, 397 U.S. 532, 539 [90 S.Ct. 1288, 1292, 25 L.Ed.2d 547] (1970).
 
 
 19
 Id. at 68, 90 S.Ct. at 1561 (Harlan, J., concurring). It follows that there was no jurisdictional impediment to the district court's reconsideration of its motion to quash.
 
 
 20
 Furthermore, the Federal Rules of Criminal Procedure expressly permit the district court to extend the applicable time for filing motions when "excusable neglect" is shown. Rule 45(b) provides:
 
 
 21
 When an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done if the failure to act was the result of excusable neglect.
 
 
 22
 The record supports the government's contention of "excusable neglect." A motion signed by Thomas H. Lee, II, Assistant United States Attorney and Acting Section Chief, stated that the government never received notice of the district court's order of October 10, 1985 quashing the subpoena. Govt.App. at 57. The government's claim is supported by the filing on October 22, 1985 of the government's response to the appellants' motion to quash and the government's motion to compel compliance with the subpoena. The district court subsequently held a hearing on outstanding motions on November 1, 1985. Since there was no action by the district court on the motions for 3 months, the government sent a letter to the district court on January 30, 1986 requesting it to act on the outstanding motions. When counsel for District Council 33 responded to the government's request with a letter arguing for the first time that the government failed to move for timely reconsideration of the October 10, 1985 order, the government then filed its Motion to Reconsider And To Vacate Order Quashing Grand Jury Subpoena and its Motion For Leave to File Motion for Reconsideration Out of Time. The district court granted the government's motions.
 
 
 23
 The district judge, who was intimately familiar with the proceedings, fully accepted the government's explanation for its failure to move to reconsider within 10 days of the court's order. During the oral argument, he stated:
 
 
 24
 THE COURT: The Court was in error in granting that motion. I want to say mea culpa here on the record because I never received an answer to your motion to quash from the government and I thought I had but I had not. I was in error.
 
 
 25
 I wish to correct that error because they are certainly entitled to be heard and they were not heard and that is the purpose we have been pursuing this matter ever since. They were not given their day in court.
 
 
 26
 App. at 177.
 
 
 27
 Because the government did not have timely notice of the district court's order quashing the subpoena, the district court was justified in viewing the government's failure to file the motion for reconsideration as excusable neglect. There was no jurisdictional impediment to the court's reconsideration of the order and it did not abuse its discretion in granting the government's Motion to Reconsider.
 
 IV.
 Enforcement of the Subpoena
 
 28
 Appellant also challenges the substance of the district court's order by arguing that the trial court abdicated its responsibility in ordering enforcement of the subpoena. It contends that the court should have required the government to come forward with a more detailed showing that it had a good faith basis for issuance of the subpoena than it made in the Schofield affidavit that it submitted. Further, it contends that the trial court should have given appellants an opportunity, by an evidentiary hearing or by discovery, to ascertain the factual basis underlying the prosecutor's actions and the entire grand jury investigation.
 
 
 29
 The appellant's challenge to the sufficiency of the Schofield affidavit is almost identical to the argument it made, through the same counsel that argued this appeal, to the Schofield affidavit provided in support of the 1984 subpoena. We rejected those arguments last year in In re Grand Jury Matter (District Council 33), 770 F.2d 36 (3d Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985). We held that the affidavit submitted by the government in support of the August 1984 subpoena met the requirements of Schofield I. The current subpoena is part of the same investigation that led to the issuance of the August 1984 subpoena and is supported by a nearly identical Schofield affidavit.
 
 
 30
 Appellant's suggestion of a change in circumstances that distinguishes the present subpoena from the prior one is frivolous. It bases the alleged change, which it contends substantiates its charge of harassment of Stout by the government, on two events: the fact that a county investigating Grand Jury, after investigating criminal allegations against Stout in connection with his management of the other appellants, chose to return no presentment against Stout or District Council 33; and the decision of the Court of Common Pleas that the City of Philadelphia had underpaid the Health and Welfare Fund.
 
 
 31
 Neither of these events bears on the right of the United States Attorney to proceed with an investigation before a federal grand jury. Since the county grand jury can only investigate crimes against the Commonwealth of Pennsylvania, its failure to indict Stout or anyone else related to him is patently irrelevant to the federal grand jury's investigation of whether a violation of a federal statute has occurred. See In re Grand Jury Proceedings (U.S. Steel), 525 F.2d 151 (3d Cir.1975) (vacating stay of federal grand jury proceedings pending completion of state proceedings). Moreover, the failure of the county grand jury to return a presentment is hardly the "clean bill of health" described by appellant. Patently, it would not preclude an independent federal investigation.
 
 
 32
 Similarly, the determination by the Court of Common Pleas that the City of Philadelphia had underpaid the District Council's Health and Welfare Fund has no bearing whatsoever on the validity of the 1985 subpoena. At most, that determination concerned whether Philadelphia had fulfilled its obligations to the union.
 
 
 33
 Appellant's suggestion that it is entitled to a hearing and discovery "to determine the efficacy of not only the subpoena, but of the entire grand jury investigation," Brief of Appellants at 38, has no support in law or precedent. In United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) and United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), the Supreme Court made clear that, as a general matter, there is no constitutional requirement that the government make any showing of reasonableness for the issuance of a grand jury subpoena.
 
 
 34
 This court, in the exercise of its supervisory power, has required some showing of relevancy to insure that the grand jury's subpoena power is not being misused by the prosecutor. See Schofield I, 486 F.2d at 93. We have never suggested that a witness or target is entitled to a roving inquiry into the "efficacy ... of the entire grand jury investigation", as appellant requests. An affidavit of the U.S. Attorney substantiating the relevancy of the requested items to a properly authorized grand jury investigation has been held to satisfy "the minimum showing requirements of Schofield I." Schofield II, 507 F.2d at 967.
 
 
 35
 Appellant suggests that because Stout has previously been investigated, the district court was required to view the 1985 subpoena as harassment. We have summarily rejected the contention of a company that its subjection to a succession of subpoenas constitutes a sufficient showing of harassment or bad faith by the government to warrant rejection of the Schofield affidavit. See In re Grand Jury (Schmidt), 619 F.2d 1022, 1028-29 (3d Cir.1980). Stout has been subject to nothing like the 4 1/2 year investigation by four strike force grand juries which we held in Schmidt was still subject to the presumption of regularity that attaches to grand jury proceedings. Id.
 
 
 36
 Our Schofield opinions "have sought to preserve the proper balance between the grand jury's need to know and the rights of witnesses summoned before it." U.S. Steel, 525 F.2d at 158. They are not designed to permit witnesses to obstruct the legitimate function of the grand jury. Where a district court and the court of appeals have rejected a challenge to an earlier subpoena based on grounds indistinguishable in any practical sense from those underlying the current challenge, the inference is compelling that this repeated challenge to the Schofield affidavit is made solely for the purpose of delay.
 
 V.
 Conclusion
 
 37
 In summary, we find no merit either under the facts or under the applicable law to appellant's challenges to the district court's order refusing to vacate its earlier order directing compliance with the subpoena. During the oral argument, we learned that there still has been no compliance with the 1984 subpoena, notwithstanding our earlier opinion affirming in all respects the district court's refusal to quash that subpoena. There may be an explanation for such dilatoriness that does not appear on the record that is before us on this appeal. The delay heightens our concern that the grand jury investigation is being frustrated. In order to expedite the conclusion of whatever proceeding may still be pending in the district court, we will direct that the mandate in this case be issued immediately.
 
 
 38
 For the reasons set forth above, we will dismiss the appeals of JFK Hospital, Earl Stout, and District Council 33. We will affirm the district court's order of March 11, 1986 affirming its earlier order of February 3, 1986.
 
 
 
 [1]
 Because of the procedural posture in which this case reaches us, we do not have the benefit of a factual record. We have therefore accepted the statements in the parties' briefs as facts for the purpose of this opinion
 
 
 [2]
 In so holding, we do not define the nature of a proprietary interest short of ownership of the documents that would justify standing to appeal. However, we reject the suggestion that the mere fact that the records subpoenaed contain information relating to the objecting party is a basis for finding standing, absent a claim of privilege